UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAYMOND R.,[1]  
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:21-cv-539
Cole, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Raymond R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6) and the Commissioner's response in opposition (Doc. 11).

**I. Procedural Background**

Plaintiff protectively filed his application for DIB on June 1, 2020, alleging disability since July 29, 2019, due to arthritis and muscle spasm in the cervical spine, hypogonadism, prolactinoma, thoracolumbar spine degenerative disc disease with disc protrusion, lower right and left extremity radiculopathy sciatic nerve pain, left and right knee patellofemoral pain syndrome, sleep apnea, migraine headaches, and anxiety disorder with trauma and stressor disorder. (Tr. 240). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

("ALJ") Stuart Adkins.  Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing via telephone on April 7, 2021.  On May 26, 2021, the ALJ issued a decision denying plaintiff's DIB application.  This decision became the final decision of the Commissioner when the Appeals Council denied review on August 5, 2021.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. The [plaintiff] engaged in substantial gainful activity between his alleged onset date of July 29, 2019, through the end of the first quarter of 2020, or March 31, 2020 (11D). However, the undersigned will evaluate the [plaintiff]'s disability application for the entire period, beginning since July 29, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: obesity; degenerative disc disease, lumbar, cervical, and thoracic spine; syringomyelia; prolactinoma and hypogonadism; anxiety; and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of the criteria of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for about 4 hours and sit for about 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs; occasionally stoop, kneel, and crouch; occasional exposure

to extreme cold; should avoid unprotected heights, dangerous machinery, and commercial driving; limited to performing tasks that are not at a production rate pace and without strict performance quotas; and can tolerate only occasional changes to a routine work setting, defined as one-to-two changes per week.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born . . . [in] 1977 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is not disabled, whether or not the [plaintiff] has transferable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 29, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-25).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] Plaintiff's past relevant work was an infantry unit leader, a very skilled, heavy position; personnel clerk, a sedentary, semi-skilled position; a composite job consisting of a material handler (heavy/semi-skilled) and delivery route driver (medium/semi-skilled); and an ATM servicer, a light, skilled position. (Tr. 23, 54).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as marker (129,000 jobs nationally), office helper (14,000 jobs nationally), and photocopy machine operator (9,800 jobs nationally). (Tr. 24, 55-56).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

On appeal, plaintiff alleges the ALJ erred by failing to (1) "acknowledge [plaintiff's] VA Disability Rating" and (2) "fully consider essential vocational expert testimony finding [plaintiff] to have [the] functional capacity to perform light work." (Doc. 6).

The Commissioner argues that the ALJ's decision is substantially supported by the record because "under the new regulations applicable to this claim," the ALJ "had no obligation to provide any analysis in the decision on how [the disability rating from the Department of Veterans Affairs] was considered." (Doc. 11 at PAGEID 1220). The Commissioner also argues that the ALJ's RFC and Step Five determinations are supported by substantial evidence because

5

plaintiff "fails to present any evidence establishing that he had work preclusive limitations. . . ." (*Id*.).

### 1. The ALJ's evaluation of the VA disability rating

In his first assignment of error, plaintiff alleges the ALJ erred by "failing to acknowledge [plaintiff's] VA disability rating." (Doc. 6 at PAGEID 1201). Quoting SSR 06-03p, plaintiff argues the ALJ erred when he "failed to recognize or articulate the VA's disability rating" because "evidence of a disability decision by another governmental or non-governmental agency cannot be ignored and must be considered." (*Id*. at PAGEID 1202, quoting SSR 06-03p, 2006 WL 2329939).[4]

The Commissioner argues that the ALJ did not err by failing to discuss the VA's disability rating because under the new regulations applicable to plaintiff's claim, the ALJ is not required to provide any analysis into decisions from other governmental agencies. (Doc. 11 at PAGEID 1222, citing 20 C.F.R. § 404.1520b(c), (c)(1)).

Plaintiff protectively filed his Title II application for DIB on June 1, 2020. (Tr. 15). The regulations governing plaintiff's claim state that the ALJ need not provide an analysis concerning plaintiff's disability rating from the VA. 20 C.F.R. § 404.1504. Specifically, Section 404.1504, which governs claims filed on or after March 27, 2017, provides:

> Other governmental agencies and nongovernmental entities—such as the *Department of Veterans Affairs*, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make *disability*, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. *Therefore, in claims filed (see § 404.614) on or*

---

[4] To the extent plaintiff alleges the ALJ erred pursuant to SSR 06-03p, plaintiff's argument is without merit because SSR 06-03p has been rescinded "for claims filed on or after March 27, 2017." *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

> *after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.* However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

*Id*. (emphasis added); *see also* 20 C.F.R. § 404.1520b(c)(1).

Accordingly, the ALJ was not required to provide any analysis concerning plaintiff's disability rating from the VA.[5] *See Boggs v. Comm'r of Soc. Sec*., No. 2:20-cv-6135, 2021 WL 4771267, at *6-7 (S.D. Ohio Oct. 13, 2021); *see also Gibbas v. Comm'r of Soc. Sec. Admin*., No. 3:19-cv-400, 2021 WL 4451669, at *4-5 (S.D. Ohio Sept. 29, 2021) ("Because [the plaintiff's] claim was filed after March 27, 2017, the ALJ was not required to provide any analysis of the VA's disability rating.").

### 2. The ALJ's evaluation of the medical evidence of record

In the second assignment of error, plaintiff alleges the ALJ "failed to fully consider essential vocational expert testimony finding [plaintiff] to have functional capacity to perform light work." (Doc. 6 at PAGEID 1203).

The Commissioner generally argues that the ALJ's decision is supported by substantial evidence. (Doc. 11 at PAGEID 1223-27). The Commissioner contends that plaintiff "fails to present any evidence substantiating the hypothetical limitations involving time off task or absenteeism, and thus he fails to show any error in the ALJ's step-five finding." (*Id*. at PAGEID 1203).

---

[5] Plaintiff does not argue that the ALJ failed to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. § 404.1504. Rather, plaintiff contends the ALJ erred by failing to "articulate one or more reasons for rejecting [plaintiff's] 100% VA disability rating. . . ." (Doc. 6 at PAGEID 1202).

7

Plaintiff argues the ALJ erred by not finding plaintiff met the work-preclusive limitations in one of the hypotheticals asked by the ALJ to the VE at the hearing, i.e., "an individual being off-task for more than 15% of a work day, and needing to be absent from work more than three (3) days per month." (Doc. 6 at PAGEID 1203, citing Tr. 57, 59). Plaintiff contends that because "being off-task for more than 15% of a work day, and needing to be absent from work more than three (3) days per month . . . preclude[s] all competitive work in the national economy," the ALJ erred by "failing to fully consider essential vocational expert testimony that accurately portrayed [plaintiff's] physical impairments." (*Id*.).[6] Plaintiff also argues that the ALJ failed to fully consider the VE testimony finding plaintiff to have the functional capacity to perform light work. (*Id*.).

In addition to testifying to plaintiff's past relevant work and other jobs he could perform in the national economy, the VE testified that being off task more than fifteen percent of the time "would be a work preclusive factor." (Tr. 57). The VE further testified that being absent three days per month "would become work preclusive in the national economy." (*Id*.).

Plaintiff is correct that the VE testified that these limitations would be work-preclusive. However, the fact that the ALJ asked about the residual functional capacity of a hypothetical person with particular limitations does not mean the VE's answer is binding on the ALJ. Simply posing a hypothetical question to the VE does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019)). *See also Aiello v. Comm'r of Soc. Sec.*, No. 1:19-cv-01558, 2020 WL 2526956, at *3 (N.D. Ohio May 18, 2020) (finding "the mere

---

[6] Plaintiff alleges no error in the ALJ's evaluation of symptoms and limitations stemming from plaintiff's mental impairments, i.e., anxiety and PTSD.

fact that the ALJ asked the VE about certain hypothetical limitations does not mean that the ALJ is then required to adopt them into the RFC") (citing *Sayler v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 596 (6th Cir. 2014) (per curiam)).

Moreover, plaintiff cites no objective medical evidence in the record to establish he would be off-task for more than 15% of a work day or that he would be absent from work more than three days per month. *See Miller v. Commssioner of Soc. Securty Admin.*, No. 3:20-cv-506, 2021 WL 4745430, at *4 (S.D. Ohio Oct. 12, 2021), *report and recommendation adopted sub nom*. *Miller v. Comm'r of the Soc. Sec. Admin.*, No. 3:20-cv-506, 2021 WL 5003452 (S.D. Ohio Oct. 27, 2021) (finding plaintiff's argument that the "RFC should have included the work-preclusive restrictions of being off task and absent from work due to her impairments" without merit because "none of the record evidence cited by Plaintiff actually demonstrate[ed] that her impairments would cause her to be off task twenty percent of the time and miss two days of work a month"). Instead, plaintiff cites his own testimony at the hearing in support of his argument. (Doc. 6 at PAGEID 1204-05).[7] Specifically, plaintiff states:

> According to his [plaintiff's] testimony, [plaintiff] reported needing to be bedridden for at least one full day after he works two days consecutively. This is largely due to stiffness that stems from his exertion and the rest that is required for him to be able to function (Doc. 4-2 at 46; PageID #58). In the event that [plaintiff] works with his present disablements, it is apparent that he will require taking at least one day off after every three days of work, which will clearly occur multiple times per

---

[7] The Court notes that in addition to citing his own testimony, plaintiff also cites nine exhibits in the record, with no accompanying explanation, in support of his argument that the ALJ erred in finding plaintiff would not be off task more than fifteen percent of the time and would not miss more than three days of work per month. (Doc. 6 at PAGEID 1204). In a single sentence, plaintiff states, "In support of this notion, [plaintiff's] extensive medical file documents his disabling physical conditions throughout Exhibits: 1F, 4F, 5F, 6F, 7F, 8F, 9F, 11F, and 12F." (*Id*.). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument). Plaintiff failed to develop this argument legally or factually, provide any analysis, or cite to any specific treatment notes or reasons as to why plaintiff believes the ALJ committed error. Therefore, to the extent plaintiff relies on mere citations to exhibits in the medical record in support of his argument, any such argument is waived. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, *as well as arguments adverted to in only a perfunctory manner*, are waived").

>month. Additionally, [plaintiff] reported having to see a deep tissue massage therapist once a month (Doc. 4-2 at 53; PageID #65). Since this is [an] ongoing occurrence, [plaintiff] will also require at least one absence per month for this reason alone.

(*Id*. at PAGEID 1204).

Contrary to plaintiff's allegations, no medical source of record opined that plaintiff's impairments would cause plaintiff to "be bedridden for at least one full day after he works two days consecutively"; take "at least one day off after every three days of work, which will clearly occur multiple times per month"; and have "at least one absence per month" due to "deep tissue massage" therapy appointments. (*Id*.). The ALJ thoroughly examined the medical evidence of record and concluded that plaintiff's "physical impairments, including obesity, back condition, and pituitary gland problems, were accounted for with a limitation to only light work, with additional limitations." (Tr. 21). Plaintiff fails to cite any objective medical evidence in the record, other than his own testimony, that would support these allegations.

A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512. The burden is on the claimant to furnish medical and other evidence about his impairments and the effects of his impairments on his ability to work. *Id*. Here, plaintiff has not shown that the ALJ erred by failing to include restrictions in the RFC for being off task or absent from work. The ALJ thoroughly evaluated the medical evidence related to plaintiff's impairments and explained his reasons for including the functional restrictions related thereto in the RFC. (Tr. 21-23). Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ. Nor has plaintiff shown the ALJ erred when he failed to rely on VE testimony that did not accurately reflect plaintiff's functional limitations. Plaintiff has not met his burden of proof to

10

show the ALJ's decision is not supported by substantial evidence. Therefore, plaintiff's second assignment of error is without merit and should be overruled.

Plaintiff also alleges error in the ALJ's evaluation of the state agency physicians' opinions. (Doc. 6 at PAGEID 1205). In a single sentence, plaintiff argues, "Had ALJ Adkins taken Dr. Koch's and Dr. Schultz's opinions with persuasive weight, he would have acknowledged the fact that [plaintiff] is suffering from severe back impairments that continue to provide excruciating pain on a daily basis." (*Id.*).

The Commissioner argues that the ALJ committed no error because the ALJ "imposed greater restrictions on Plaintiff's RFC than the state agency physicians." (Doc. 11 at PAGEID 1225). The Commissioner specifically contends that "the ALJ's finding was more favorable to Plaintiff than that of either state agency physicians and thus, Plaintiff fails to show any error." (*Id.*, citing cases).

The ALJ found the state agency physicians' opinions "mostly persuasive." (Tr. 22). In evaluating their opinions, the ALJ, however, imposed greater limitations than were opined by the state agency physicians. The ALJ stated, "Dr. Koch and Dr. Schultz'[s] findings are mostly consistent with the overall objective evidence, however, the undersigned [ALJ] curbed the evidence in a light most favorable to the claimant by further reducing the claimant's walking and standing." (*Id.*). Plaintiff's argument should be overruled because if, as plaintiff argues, the ALJ gave the state agency opinions "persuasive weight," and therefore adopted their limitations verbatim, the RFC would have less restrictive limitations because the ALJ imposed greater limitations than opined by the state agency physicians. Plaintiff's argument is therefore without basis and should be overruled. *Putman v. Comm'r of Soc. Sec.*, No. 2:20-cv-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when

11

discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined.").

Within this assignment of error, plaintiff also argues that the ALJ erred by failing to evaluate the opinion from Julie Lanter, plaintiff's "treating Physician's Assistant." (Doc. 6 at PAGEID 1205). Plaintiff alleges the ALJ's "residual capacity assessment was erroneous and unjust" because the ALJ failed to "acknowledge[] or take[] into account" Ms. Lanter's statement that plaintiff "will have low back pain and pain in his spine for the rest of his life. . . ." (*Id.*).

Citing 20 C.F.R. § 404.1513(a)(2), the Commissioner argues that "the ALJ was not required to evaluate [Ms. Lanter's] conclusion because it is not a medical opinion under the regulations." (Doc. 11 at PAGEID 1226). Specifically, the Commissioner contends that "Ms. Lanter's statement clearly does not meet the regulatory definition [for a medical opinion] as she fails to identify any specific functional restrictions resulting from Plaintiff's spinal condition (Tr. 1163), and therefore, the ALJ had no obligation to evaluate her conclusion." (*Id.*).

The statement at issue is within a February 25, 2021 treatment note where Ms. Lanter, a physician's assistant, stated the following: "He will likely have pain in his spine for the rest of his life and needs to be cautious with his level of activity. Over use will send him back in to poorly controlled pain." (Tr. 1163). Although a "Licensed Physician Assistant" is an "acceptable medical source" with respect to claims filed on or after March 27, 2017 (20 C.F.R. § 404.1502(a)(8)), the ALJ did not err by failing to evaluate Ms. Lanter's statement because it was not a "medical opinion" under the applicable regulations. 20 C.F.R. § 404.1513(a)(2).

The ALJ is required to evaluate "medical opinions" in determining whether a claimant is disabled. *Id.*; 20 C.F.R. § 404.1520c(a). A "medical opinion" is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related

> limitations or restrictions in the following abilities: (For claims filed (see § 404.614) before March 27, 2017, see § 404.1527(a) for the definition of medical opinion.)
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Ms. Lanter's statement that plaintiff "will likely have pain in his spine for the rest of his life and needs to be cautious with his level of activity [because] [o]ver use will send him back in to poorly controlled pain" is not a "medical opinion" under the regulations because Ms. Lanter's statement fails to identify what plaintiff "can still do despite [his] impairments" and whether plaintiff has "one or more impairment-related limitations or restrictions. . . ." (*Id.*). *See Cadwell v. Comm'r of Soc. Sec.*, No. 3:20-cv-02317, 2022 WL 970023, at *2-3 (N.D. Ohio Mar. 30, 2022) (finding no error in the ALJ's failure to address a statement from the plaintiff's physician because the "opinion contain[ed] no work-related or functional opinions"). *See also Mason v. Comm'r of Soc. Sec.*, No. 3:20-cv-02013, 2021 WL 7286812, at *8 (N.D. Ohio Dec. 15, 2021), *report and recommendation adopted*, 2022 WL 592944 (N.D. Ohio Feb. 28, 2022) (finding a statement from the plaintiff's physician did "not meet the definition of a medical opinion under § 404.1513(a)(2)" because the physician did "not state what [the plaintiff] can still do despite her

13

headaches, nor does [the physician] offer an opinion on the functional limitations posed by [the plaintiff's] headaches"). Therefore, the Court recommends that plaintiff's argument concerning the ALJ's failure to discuss Ms. Lanter's statement be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

For the reasons stated herein, plaintiff's Statement of Errors (Doc. 6) be **OVERRULED**, and the Commissioner's non-disability finding be **AFFIRMED**. **IT IS FURTHER RECOMMENDED** that judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court

Date: 5/19/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAYMOND R.,                          Case No. 1:21-cv-539
    Plaintiff,                               Cole, J.
                                                Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).